IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANNIE MARJORIE HIBNER,

    Plaintiff,

v.                                                            16cv171 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Annie Hibner applied for disability insurance benefits on February 4, 2013, alleging disability beginning on November 10, 2010, from eleven conditions, including back pain, fibromyalgia, and migraine headaches. (Administrative Record "AR" 166, 204.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on her Motion to Reverse and Remand, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Hibner's reply. (Docs. 17, 18, 19.) For the reasons explained below, I grant Hibner's motion and remand the case to the SSA for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

In reviewing the Administrative Law Judge's ("ALJ") decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. I may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that []he has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a claimant is

not prevented from performing her past work, then she is not disabled. 20 C.F.R. § 404.1520(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Hibner is fifty-nine years old. (AR 166.) She has a GED. (AR 205.) The record indicates a work history in administration and purchasing dating back to 1993 (AR 193), which ended in 2010 after she was laid off from her job, fell, and injured herself (AR 39-40).

I do not address everything in the record but rather target my factual discussion to those facts necessary to the disposition of this case.

After her fall in 2011, Hibner underwent two surgeries: one for her cervical spine on August 23, 2011, and the other for her lumbar spine on October 27, 2011. (AR 319, 370.) She attended twelve physical therapy sessions between February 2012 and May 2012. (*See* AR 390-407.) At discharge, her therapist concluded that her pain was "consistent with chronic pain syndrome rather that mechanical low back pain." (AR 406.)

Treatment records from William Johnson, M.D., Hibner's treating physician for pain management, begin in August 2012 and continue until November 2015. (AR 408-434, 452-472, 475-492, 516-526.) Dr. Johnson addressed Hibner's "long complicated pain management problem list" (AR 455) with a variety of treatments, including trigger point injections (AR 411,

432, 466, 478, 487, 521) and assorted physical therapies (*see, e.g.*, AR 411, 430). On April 15, 2013, Dr. Johnson completed a Treating Physician's Migraine Headache Form which notes, among other things, that Hibner experiences headaches three times per week that "average 6-8 hrs; some > 24 hrs," the migraines "interfere with ability to work," and that Hibner misses an average of three days of work per week. (AR 434.)

On April 7, 2013, Hibner's friend and former neighbor, Theresa Phillips, completed an Adult Third Party Function Report. (AR 240-249.)

Eligio Padilla, Ph.D., conducted a mental status examination on May 25, 2013. (AR 444-448.) His diagnosis included twelve disorders, one of which was "migraines." (AR 447.)

Jon Brown, D.O., an agency consultative examiner, also examined Hibner on May 25, 2013. (AR 436-442.) Dr. Brown noted, among other things, Hibner's history of migraines and that she "reports that this affect[s] her ability to work secondary to difficulty concentrating on work related activities." (AR 437.)

Ronald Davis, M.D., a non-examining agency consultant, reviewed the medical evidence on June 7, 2013, including the Treating Physician's Migraine Headache Form that Dr. Johnson completed. (AR 85-87.) Dr. Davis concluded that the record "support[s] RFC of Sedentary with Postural Limitations." (AR 87.) Nancy Armstrong, M.D., reviewed and affirmed Dr. Davis's RFC on October 31, 2013. (AR 101-104.)

### ALJ and Appeals Council's Decision

The ALJ issued his decision on June 5, 2015. (AR 22.) At step one, he determined that Hibner had not engaged in substantial gainful activity since November 10, 2010. (AR 16.) At step two, he found that Hibner had the severe impairments of:

> "cervical spine C5-6 spondylosis with spinal stenosis and neural foraminal stenosis with a history of C5-6 anterior cervical discectomy and fusion;

4

>   lumbrosacral L4-5 disc protrusion with impingement on the left L5 nerve root with a past history of L4-5 hemilaminotomy and foraminotomy; myofascial pain with fibromyalgia; post-herpetic neuralgia; cervical radiculopathy; lumbar radiculopathy with endstage neuropathic pain; nociceptive diffuse joint pain; and[] migraine headaches."

(*Id.*)

At step three, the ALJ concluded that Hibner did not have an impairment or combination of impairments that met or medically equaled anything in the Listing of Impairments. (AR 17.)

At phase one of step four, the ALJ determined that Hibner had the RFC "to perform sedentary work" with the following restrictions:

>   [S]he is able to push and pull less than ten (10) pounds with her lower extremities. She may stand or walk two (2) hours per eight (8) hour workday with normal breaks. She may occasionally climb ramps and stairs, but she could never climb ladders, ropes, and scaffolds. She may occasionally balance, stoop, crouch, kneel, and crawl. Environmentally, she must avoid more than frequent exposure to extremes of heat and cold.

(*Id.*) In making this determination, the ALJ found Hibner "not entirely credible" (AR 19), referenced but did not weigh the opinions of Dr. Johnson (*id.*), referenced but did not weigh the opinion of agency consultant Dr. Brown (AR 20), gave "significant weight" to the opinion of non-examining agency consultant Dr. Armstrong (AR 21), and gave "little weight" to Phillips's third party function report (*id.*).

At phases two and three of step four, the ALJ determined that Hibner had past relevant work as a repair order clerk, "is able to perform it as actually and generally performed," and is therefore not disabled. (AR 21-22.)

Hibner sought review with the Appeals Council and submitted, as additional evidence, a medical source statement from Dr. Johnson, dated November 16, 2015, which noted that she "suffers from chronic migraine headaches," and that her "constellation of chronic pain issues . . . would make any type of sustained employment impossible at this time." (AR 525.) The Appeals

5

Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Hibner cites three reasons to support reversing and remanding her case. (*See* Doc. 17 at 4.) First, the ALJ committed legal error by failing to account for her severe impairment of migraines in the RFC. (*See id.* at 12-17.) Second, the ALJ committed legal error by improperly diminishing her credibility. (*See id.* at 17-26.) And third, the ALJ's decision is not supported by substantial evidence. (*See id.* at 26.) Because the ALJ erred in his analysis of Hibner's migraines, I do not reach the remaining two claims of error, because re-assessing the migraine evidence may adjust the rest of the ALJ's decision on remand.

Hibner, the Commissioner, and the ALJ agree that Dr. Johnson is a treating physician. (*See respectively* Doc. 17 at 6; Doc. 18 at 7 (citing a case discussing a treating physician but not explicitly stating that Dr. Johnson is a treating physician); (AR 20) (referring to Hibner's "treating physician" and citing exhibits in the record that Dr. Johnson completed).) An ALJ must complete the following "sequential two-step inquiry" when evaluating a treating source's medical opinion: (1) decide whether the opinion "is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record" and, if it is, give the opinion "controlling weight," and (2) even if it is not given controlling weight, "make clear how much weight the opinion is being given" and "give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The "factors specified in the cited regulations" are: (1) the examining relationship; (2) the treatment relationship, including the length and nature of the relationship; (3) the supportability of the

findings; (4) the consistency of the opinion "with the record as a whole"; (5) his status as a specialist; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 1527(c). Though the C.F.R. lists six factors, the ALJ need not discuss each factor, because "not every factor . . . will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted).

The ALJ did not explicitly weigh Dr. Johnson's opinion but seemed to afford it controlling weight because he relied on Dr. Johnson's findings to suggest that Hibner's pain was managed and greatly improved. (*See generally* AR 20.) For instance, the ALJ noted a February 2015 "in-office physical examination" where Dr. Johnson wrote that Hibner's "migraine headaches were 'not significantly high on (her) pain management list.'" (*Id.*) In total, to support his RFC, the ALJ cited four of the five exhibits in the record that Dr. Johnson completed: 9F (AR 408-433), 15F (AR 452-472), 18F (AR 475-492), and 20F (AR 516-523).[1]

The unmentioned exhibit—10F (AR 434)—is the Treating Physician Migraine Headache Form that Dr. Johnson completed, and it directly conflicts with the RFC because it states that Hibner's migraines impede her ability to work and would cause her to miss the majority of the workweek—i.e., three days per week. Hibner argues that the ALJ erred because he "failed to provide the requisite analysis in rejecting Dr. Johnson's opinion regarding the nature and severity of [her] migraines" (Doc. 17 at 16), while the Commissioner contends that the ALJ did not err because the form conveyed Hibner's subjective complaints, rather than reflecting a diagnosis from Dr. Johnson, and is therefore "not entitled to deference or significant weight" (Doc. 18 at 6-7).

---

[1] The letter Dr. Johnson submitted to the Appeals Council, Exhibit 21F (AR 524-527), was not before the ALJ. Though the exhibit discusses Hibner's migraines and inability to work, she does not address it in the migraine section of her brief (*see* Doc. 17 at 12-17), so I omit discussion of it.

7

I agree with Hibner; the ALJ committed legal error because he did not complete any treating physician analysis, and under any scenario, he failed to properly account for the Migraine Headache Form. If the ALJ afforded Dr. Johnson's opinion controlling weight, then the Migraine Headache Form should have been accounted for in the RFC or addressed in the decision. If the ALJ afforded Dr. Hibner's opinion partial weight, then the ALJ should have discounted the Migraine Headache Form, because an "ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). And if the ALJ intended to wholly reject Dr. Johnson's opinion, then he needed to complete the *Krauser* two-step inquiry, which he did not do.

The Commissioner's argument that the Migraine Headache Form was based on Hibner's subjective complaints and otherwise unsupported by the record may have merit, but it should have been addressed by the ALJ. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). Given that the ALJ provided no analysis of Dr. Johnson's treating physician opinion and did not mention the Migraine Headache Form, any gap filling at this point would constitute a post-hoc rationalization.

## CONCLUSION

The ALJ erred by failing to include the *Krauser* two-part treating physician analysis of Dr. Johnson's opinion and failing to account for the Migraine Headache Form. On remand, the ALJ will apply the *Krauser* analysis to Dr. Johnson's opinion and address the Migraine Headache Form. Hibner's motion is granted, and the case is remanded to the SSA for further proceedings.

IT IS SO ORDERED.

                                                              _William P. Lynch_
William P. Lynch
United States Magistrate Judge